IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IOENGINE, LLC, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>INTERACTIVE MEDIA CORP. )<br>d/b/a KANGURU SOLUTIONS, )<br>)<br>Defendant. )<br>) | Civil Action No. 14-1571-GMS |
| IOENGINE, LLC, )<br>)<br>Plaintiff and Counterclaim-Defendant, )<br>)<br>v. )<br>)<br>IMATION CORP., )<br>)<br>Defendant and Counterclaim-Plaintiff. )<br>) | Civil Action No. 14-1572-GMS |
| IMATION CORP., )<br>)<br>Counterclaim-Plaintiff, )<br>)<br>v. )<br>)<br>IOENGINE, LLC. and SCOTT F. McNULTY, )<br>)<br>Counterclaim-Defendants. )<br>) | **[JURY TRIAL DEMANDED]** |

## ORDER CONSTRUING THE TERMS OF
## U.S. PATENT NO. 8,539,047

After having considered the submissions of the parties, and hearing oral argument on the matter, IT IS HEREBY ORDERED, ADJUDGED, and DECREED that, as used in the asserted claims of U.S. Patent No. 8,539,047 (the "'047 patent"):

1. The term **"portable device"** is construed to have its plain and ordinary meaning.[1]

2. The term **"processor"** is construed to have its plain and ordinary meaning.[2]

3. The term **"memory"** is construed to have its plain and ordinary meaning.[3]

4. The terms **"first program code," "second program code," "third program code/ third processing code," "executable program code stored thereon,"** and

---

[1] The court rejects Interactive Media Corp.'s ("Interactive's") proposed construction of "personal computing device." The court does not believe Interactive's construction would add clarity to the technical and nontechnical meaning of the terms. Interactive argues that throughout the '047 patent specification and prosecution history, the inventor differentiated the claimed invention from prior art by emphasizing the primacy of the "portable device" in providing the processing power to process data. (D.I. 41 at 4.) However, the court agrees with the plaintiff, IOENGINE, LLC ("IOENGINE"), that this alone is not a sufficient reason to replace the word portable with personal. (D.I. 42 at 18). Moreover, the court is persuaded that the specification suggests that the device is not only for individual use. (D.I. 41 at 4.) Finally, while the specification emphasizes the independent computing power, (*id.*), this does not persuade the court to construe portable device as computing device. The court concludes that this claim does not require a construction that is more precise than plain and ordinary meaning. *See U.S. Surgical Corp v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) ("Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims . . . .").

[2] The court rejects Interactive's proposed construction of "a microprocessor." Interactive argues that the Microsoft Computer Dictionary entry for "processor" refers users to the term "microprocessor." (D.I. 41 at 8.) As additional support, Interactive posits that the '047 specification describes an embodiment that supports its proposed construction. (*Id.* at 9.) The court agrees with IOENGINE that Interactive's proposal unnecessarily and improperly limits the claim to one type of processor. (D.I. 42 at 17, 19.)

[3] The court rejects Interactive's proposed construction of the term "memory" as "any mechanism and/or embodiment allowing a processor to affect the storage and/or retrieval of information." (D.I. 41 at 9.) The court agrees with IOENGINE that memory is a term that is readily understood and needs no construction. (D.I. 42 at 20.) Moreover, there are many potential embodiments of memory. (*Id.*)

"**program code stored on the portable device memory**" are construed to have their plain and ordinary meaning.[4]

Dated: March 21, 2016

UNITED STATES DISTRICT COURT

---

[4] The court rejects the proposals of both defendant Imation Corp. ("Imation") and IOENGINE, which do nothing to improve the meaning of claim terms that are already clearly understood when read in the context of the claim overall. To begin with, it is not necessary for the court to construe the meaning of first, second and third, which is self-evident and not really in dispute. As for the meaning of "program code," IOENGINE's construction ignores Mr. McNulty's decision during prosecution to amend the claim to replace the term "program code" with "sequence of instructions." (D.I. 62 at 4.) The court declines to construe this language in a way that interferes with this decision.
More generally, the court declines to construe terms that are already evident from reading the entire claim. The Federal Circuit has instructed courts not to "interpret claim terms in a vacuum, devoid of the context of the claim as a whole." *Kyocera Wireless Corp. v. Int'l Trade Comm'n*, 545 F.3d 1340, 1347 (Fed. Cir. 2008). To the extent that the surrounding claim language provides a context for understanding "first program code," "second program code," and "third program code," the court believes the meaning of these terms is clear when considered in the context of the entire claim. As IOENGINE points out, injecting additional limitations for particular terms standing independently will likely confuse the jury. (D.I. 52 at 51.) For example, the words "first program code" are embedded in a claim that states "first program code which, when executed, causes an interactive user interface to be presented on the first output component, wherein the interactive user interface is configured to enable the user to cause the portable device processor to execute program code stored on the portable device memory" and need no further explanation. ('047 at 31:3-8.)
The court also declines IOENGINE's invitation to construe "executable program stored thereon" to mean "a sequence of instructions that can be run from the portable device memory on which it is stored." (D.I. 42 at 4-5.) First, the parties agree that "executable" means "can be run," which is consistent with its plain and ordinary meaning. "Where there is a point of departure between the parties is that IOENGINE believes that a fundamental part of the patent and the invention is that the program code is stored on the portable device memory and is run from the portable device memory on which it is stored." (D.I. 52 at 12.) When the words are not excerpted and the claim is read in its entirety: "a memory having executable program code stored thereon," there is no need to guess at what thereon refers to: it refers back to the word memory. The meaning of the claim is clear when read holistically.
Applying the same logic, the court rejects IOENGINE's proposal to construe "program code stored on the portable device memory" to mean "containing a sequence of instructions that can be run from the portable device memory on which it is stored." The claim read in entirety already conveys that the program can be executed on the program device memory. The court need not impose further limitations on words that already have a clear meaning within the context of the whole claim. *See Hockerson–Halberstadt, Inc. v. Converse Inc.*, 183 F.3d 1369, 1374 (Fed. Cir. 1999) ("proper claim construction ... demands interpretation of the entire claim in context, not a single element in isolation."); *ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1088 (Fed. Cir. 2003) ("While certain terms may be at the center of the claim construction debate, the context of the surrounding words of the claim also must be considered....").

3