IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IOENGINE LLC,<br><br>    Plaintiff,<br><br>v.<br><br>INTERACTIVE MEDIA CORPORATION., | Civil Action No. 14-1571-GMS |
| IOENGINE LLC,<br><br>    Plaintiff,<br><br>v.<br><br>IMATION CORP.,<br><br>    Defendants. | Civil Action No. 14-1572-GMS |

## **MEMORANDUM**

**I.   BACKGROUND**

On December 31, 2014, the plaintiff IOENGINE, LLC a Delaware Limited Liability Company ("IOENGINE") filed patent infringement actions against Imation Corp. ("Imation") and Interactive Media Corp. ("IMC") asserting infringement of United States Patent No. 8,539,047 ("the '047 patent"). (D.I. 1.) The '047 patent was issued to the inventor, Scott McNulty ("McNulty"), who also founded IOENGINE. *Id.* ¶ 9. Subsequently, Imation and IMC answered the Complaint. (C.A. No. 14-cv-1571, D.I. 8; C.A. No. 14-cv-1572, D.I. 12.)[1] Imation filed an

---

[1] For clarity, all docket references will refer to IOENGINE, LLC v. Imation Corp., C.A. No. 14-cv-1572, unless noted otherwise.

Amended Answer and Counterclaim, asserting counterclaims against IOENGINE and McNulty for inequitable conduct. (D.I. 46 ¶¶ 80-92.)

On October 7, 2014, a Patent Assignment was executed between Scott McNulty and IOENGINE. (D.I. 178, Ex. A.) The assignment purported to "assign, transfer, convey, sell and deliver to [IOENGINE, LLC] all right, title and interest in, to and under the ['047 patent.] (*Id.*) On October 7, 2014, Mr. McNulty executed a Certificate of Formation of IOENGINE, LLC. (179 at Ex. 3.) On October 8, 2014, the Certificate of Formation was filed with the office of the Secretary of State of Delaware. (D.I. 173, Ex. B; D.I. 178 at 1-2.)

On December 1, 2016, Imation filed the present Motion to Dismiss Plaintiff's Complaint for Lack of Standing pursuant to Federal Rules of Civil Procedure 12(c) and 12(b)(1).[2] (D.I. 173.) For the reasons set forth below, the court will deny Imation's motion to dismiss.[3]

## II. STANDARD OF REVIEW

### a. Rule 12(b)(1) Standard

"A motion to dismiss for want of standing is properly brought pursuant to Rule 12(b)(1) [of the Federal Rules of Civil Procedure], because standing is a jurisdictional matter." *Ballentine v. U.S.*, 486 F.3d 810 (3d Cir. 2007). Such a motion may present either a facial or factual challenge to subject matter jurisdiction. *Lieberman v. Delaware*, C.A. No. 96–523–GMS, 2001 WL 1000936, at *1 (D. Del. Aug. 30, 2001) (citing *Mortensen v. First Savings and Loan,* 549 F.2d 884, 891 (3d Cir. 1977)). When the movant mounts a facial challenge, the court must accept all

---

[2] IMC joined in Imation's motion to dismiss on December 1, 2016. (C.A. 14-1571, D.I. 139).

[3] As a preliminary matter, IOENGINE asserts that the motion to dismiss is procedurally improper and untimely, because Imation filed the motion "on the eve of trial" and did not seek leave to file this motion consistent with the scheduling order. (D.I. 178 at 2-4.) Although the court prefers to address standing issues earlier in the proceedings, they can arise at any time and standing is not subject to waiver. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action."); *Pandrol USA, LP v. Airboss Ry. Prods., Inc.*, 320 F.3d 1354, 1367-68 (Fed. Cir. 2003) ("It is well-established that any party, and even the court *sua sponte*, can raise the issue of standing for the first time at any stage of the litigation, including on appeal.") The court is not persuaded by Imation's procedural argument. Thus, the court will resolve the motion.

factual allegations in the complaint as true and may only consider the complaint and documents referenced therein or attached. *Samsung Elecs. Co., Ltd. v. ON Semiconductor Corp.*, 541 F.Supp.2d 645, 648 (D. Del. 2008) (citing *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)).

When a factual challenge is presented, however, the court is not limited to the allegations of the complaint or required to accept its allegations as true. *Resnik v. Woertz*, 774 F.Supp.2d 614, 627 (D. Del. 2011). The court is free to weigh evidence outside the pleadings to resolve factual issues bearing on jurisdiction and the existence of disputed material facts will not prevent the court from analyzing the merits of jurisdictional claims. *Lemon Bay Partners, LLP v. Hammonds,* C.A. No. 05–327–GMS, 2007 WL 1830899, at *3 (D. Del. June 26, 2007). Although the plaintiff bears the burden to prove the existence of jurisdiction, the burden is light, since "dismissal for lack of jurisdiction is not appropriate merely because the legal theory alleged is probably false, but only because the right claimed is 'so insubstantial, implausible, foreclosed by prior decisions of the Court, or otherwise completely devoid of merit as to not involve a federal controversy.'" *Kulick v. Pocono Downs Racking Ass'n*, 816 F.2d 895, 899 (3d Cir. 1987) (quoting *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666 (1974)).[4]

Importantly, "the touchstone of constitutional standing in a patent infringement suit is whether a party can establish that it has an exclusionary right in a patent, that if violated by another, would cause the party holding the exclusionary right to suffer legal injury." *WiAV Sol. LLC v. Motorola, Inc.*, 63 F.3d 1257, 1265 (Fed. Cir. 2010). Furthermore, only the party who holds all legal rights to the patent as patentee or assignee of all patent rights can sue in their own name. *Morrow v. Microsoft*, 499 F.3d 1332, 1339 (Fed. Cir. 2007) ("When a party holds all rights or all

---

[4] In its motion, Imation attacks IOENGINE's complaint on factual grounds. The court will therefore consider evidence outside of the pleadings to determine whether subject matter jurisdiction exists.

3

substantial rights, it alone has standing to sue for infringement."). The Federal Circuit instructs that "establishing ownership of a patent that has been infringed satisfies the requirements of Article III standing." *Pandrol*, 320 F.3d 1354 at 1367-68.

### b. Rule 12(c) Standard

Pursuant to Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings "[a]fter pleadings are closed—but early enough not to delay trial." When evaluating a motion for judgment on the pleadings, the court must accept all factual allegations in a complaint as true and view them in the light most favorable to the non-moving party. *See Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008); *see also Maio v. Aetna, Inc.*, 221 F.3d 472, 482 (3d Cir. 2000). A Rule 12(c) motion will not be granted "unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Rosenau*, 539 F.3d at 221. This is the same standard as a Rule 12(b)(6) motion to dismiss. *See Revell v. PortAutk.*, 598 F.3d 128,134 (3d Cir. 2010).

### III. DISCUSSION

#### a. Validity of The Assignment: De Jure

IOENGINE has the burden of proving that jurisdiction exists, i.e. that there was a valid assignment.[5] The Federal Circuit Court of Appeals has made clear that "if the original plaintiff lacked Article III initial standing, the suit must be dismissed, and the jurisdictional defect cannot

---

[5] The recording of an assignment with the USPTO "creates a presumption of validity as to the assignment and places the burden to rebut such a showing on one challenging the assignment." *SiRF Technology, Inc. v. International Trade Com'n*, 601 F.3d 1319, 1327-28 (Fed. Cir. 2010); *Dow Chemical Co. V. Nova Chemicals Corp. (Canada)*, 458 Fed. Appx. 910, 912 (Fed. Cir. 2012). However, "[a] court may exercise jurisdiction only if a plaintiff has standing to sue on the date it files suit." *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1364 (Fed. Cir. 2010). There is undisputed evidence that IOENGINE recorded the assignment of the '047 patent from Mr. McNulty at the USPTO on June 1, 2015. (D.I. 179, Decl. Ex. 1). Imation has challenged the assignment's validity by its citation to the fact that it wasn't recorded until five months after this lawsuit was filed. Accordingly, the burden is on IOENGINE to prove that it is the valid assignee and owner of the '047 patent.

be cured." *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1364 (Fed. Cir. 2010) (quoting *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1203 (Fed. Cir. 2005)).

In support of its standing challenge, Imation contends that the undisputed facts show that on December 31, 2014, IOENGINE did not own the patent-in-suit and thus lacked standing to bring the lawsuit. (D.I. 173 at 1.) Put simply, Imation asserts that the proffered assignment is void *ab initio*. In other words, Imation maintains that IOENGINE LLC did not exist at the time of the proffered assignment and therefore could not have received any rights in the '047 patent. (*Id.* at 3-4.) To support its position, Imation relies on the Delaware Secretary of State record of "incorporation/formation", which indicates that the IOENGINE, LLC was not formed until October 8, 2014—one day after the assignment. (*Id.*, Ex. B); *see* Del Code Ann. tit. 6, § 18-201(b) ("A limited liability company is formed at the time of the filing of the initial certificate of formation in the office of the Secretary of State . . .").

In response, IOENGINE argues that the '047 patent was validly assigned to IOENGINE, LLC on October 7, 2014. (D.I. 178 at 6.) IOENGINE contends that it was Mr. McNulty's intention to assign the '047 patent to IOENGINE LLC on that date. (*Id.* at 6-9.)

Because IOENGINE was formed in Delaware, Delaware law controls the issue of its formation.[6] *See* Del. Code Ann. tit. 6, § 18-111. As just noted, Delaware law provides that "a limited liability company is formed at the time of filing of the initial certificate of formation in the office of the Secretary of State." Del. Code Ann. tit. 6, § 18-201(b). IOENGINE's contention that

---

[6] "Delaware law with regard to limited liability companies is contractarian; individuals may create an organization that reflects their perception of the appropriate relationships among the parties, most conducive to their interests, as represented by their mutual agreement. Chapter 18 of Title 6 of the Delaware Code provides default provisions applicable to Delaware LLCs where the parties' agreement is silent; where they have provided otherwise, with limited exceptions, such agreements will be honored by a reviewing court." *Huatuco v. Satellite Healthcare*, 2013 WL 6460898, at *1 (Del. Ch. 2013).

5

Mr. McNulty's intent to form IOENGINE on October 7 controls is inconsistent with the law and the plain language in the Certificate of Formation. The Certificate of Formation provides:

> 3. The term of the Company shall commence on the filing of this certificate . . . .
>
> 4. The Company shall be formed as of the date of filing of this Certificate.
>
> (D.I. 179, Ex. 3.)

The Certificate was not filed until October 8. Mr. McNulty's intent cannot overcome these facts or the requirements of the Delaware statute. Thus, it would seem that IOENGINE did not exist in a *de jure* sense at the time of the purported assignment.

In an effort to meet its burden, IOENGINE argues that it satisfied the requisites under Delaware law to be considered, *de jure*, and LLC. The cases that IOENGINE relies upon are cited for the proposition that errors in assignment do not necessarily preclude a finding of standing. *See LP Matthews LLC v. Bath & Body Works, Inc.*, 458 F. Supp. 2d 211, 215 (D. Del. 2006) (holding that the intent of the parties was to assign rights despite assignment documents mistakenly referring to the assignee as a "Company" instead of a "Corporation" where both entities existed at the time of assignment); *Southwest efuel Network, L.L.C. v. Transaction Tracking Techs., Inc.*, Civ. No. 2:07-cv-311-TJW, 2009 WL 4730464, at *2-3 (E.D. Tex. Dec. 7, 2009) (finding standing despite a clerical error in assignment where both entities existed at the time the assignment was executed, and where the assignment was signed by an officer of both entities); *Shower Enclosures America, Inc. v. BBC Distrib. Corp.*, Civ. No. 3:15-cv-627, 2016 WL 3031081, at *2-3 (N.D. Ind. May 27, 2016) (finding standing despite the assignment mistakenly referring to the assignee as "Shower Enclosures, Inc." rather than "Shower Enclosures America, Inc." where the intended assignee existed at the time of the assignment). These cases are, however, distinguishable from the one at hand.

Unlike those cases where the assignee did legally exist at the time of the assignment, IOENGINE, LLC did not exist under Delaware law at the time of the patent assignment. Here, IOENGINE's delay in filing the certificate of formation with the Delaware Secretary of State's office is not tantamount to a typographical error or trivial defect in formation. And, despite Mr. McNulty's subjective intent or belief, IOENGINE did not formally exist and could not, as a *dejure* entity, have obtained ownership of the '047 patent on October 7, 2014.

### b. Validity of the Assignment: De Facto

Thus, the answer to the standing question seems dependent upon whether IOENGINE can overcome its technical non-compliance with the rules of limited liability company formation under Delaware law. IOENGINE contends, regardless of technical non-compliance, that Delaware law would recognize IOENGINE as a *de facto* LLC as of October 7, 2014. (D.I. 178 at 9-13.) Imation challenges this contention on two grounds: first, that Delaware does not recognize *de facto* limited liability companies; second, that IOENGINE has not adduced facts that would establish its *de facto* LLC status. (D.I. 181 at 7; D.I. 173 at 6.)

The court will first consider whether Delaware law would recognize IOENGINE as a *de facto* LLC as of October 7, 2014. IOENGINE has not cited any decision wherein a *de facto* limited liability company has been recognized, and the court has been unsuccessful in its effort to locate such cases. Nevertheless, IOENGINE maintains that, where case law may be deficient in the LLC context, the court can take guidance from the rules of law and equity, particularly the more developed Delaware corporation law. *See* Del. Code Ann. tit. 6, § 18-1104; *see also Grunstein v. Silva*, 2009 WL 4698541, at *18 (Del. Ch. Dec. 8, 2009) (applying general principles of corporate acceptance of preincorporation contract to a limited liability company).

7

The court agrees with IOENGINE. Delaware law does recognize the common law-doctrine of *de facto* incorporation. *See Trustees of Peninsula Annual Conference of the Methodist Church, Inc. v. Spencer*, 183 A.2d 588, 592 (Del. Ch. 1962); *Read v. Tidewater Coal Exchange, Inc.*, 116 A. 898, 905 (Del. Ch. 1922)). Imation has not offered, nor can the court discern, any principled reason to conclude that a limited liability company would or should be treated differently from a corporation when considering the *de facto* formation of one or the other. Therefore, for purposes of resolving the present standing issue, the court will look to this equitable doctrine.[7]

In Delaware, it has been held that "[t]here are no clear set of circumstances nor a unique bright line at which a business demonstrates a *de facto* corporation status. However, generally if there has been a good faith or bona fide attempt to create and operate a corporation, but certain procedural or technical shortcomings prevent a corporation from being created, the Courts have found a *de facto* corporation exists." *Caudill v. Sinex Pools, Inc.*, 2006 WL 258302, at *2 (Del. Super. 2006).

Under Delaware law, "the existence of a *de facto* corporation requires (1) a special act or general law under which a corporation may lawfully exists, (2) a *bona fide* attempt to organize under the law and colorable compliance with the statutory requirements, and (3) actual use[] or exercise of corporate powers in pursuance of such law or attempted organization." *Trustees*, 183 A.2d at 592 (citing *Read*, 116 A. 898 at 905).

The following cases provide guidance on how courts apply the three-pronged test. In *Big Valley Associates v. DiAntonio*, the court recognized *de facto* status for a corporation where there was a one month delay in filing the certificate of corporation due to an attorney oversight. 1995

---

[7] Delaware law provides latitude for a court to exercise its equitable powers to recognize a de facto entity. See 1 Treatise on the Law of Corporations § 6:10 (3d) ("A wrongdoer should not be allowed to quibble over incorporation defects to escape liability to the corporation.")

WL 339072, at *1-2 (Del. Super. May 10, 1995) (unpublished opinion). The court relied on the following facts in finding that the corporation made a bona fide attempt to incorporate: it began business operations, it obtained and IRS corporate identification number, and it made an election for Subchapter S status. *Id.* at *3. The court also emphasized that "the corporation's *de jure* status was perfected well in advance of the claims" at issue. *Id.*

*Caudill v. Sinex Pools, Inc.*, 2006 WL 258302 (Del. Super. Jan. 18, 2006) is also instructive. In *Caudill*, the court found that Sinex Pools met the criteria for a *de facto* corporation status despite no evidence of actual submission of incorporation documents to the Secretary of State. The court looked to Sinex's actual operation as a corporation—"[c]ontracts were executed in the name of the corporation, and there [was] nothing to suggest either bad faith or a deviant motive by [the founder] in the representations that were made about the business's corporate status." *Id.* at *3.

Circumstances analogous to these would appear to exist with regard to IOENGINE. First, the Delaware Limited Liability Company Act provides a general law under which IOENGINE, LLC may lawfully exits. *See* Del. Code Ann. tit. 6 § 18-201. Second, Mr. McNulty made a *bona fide* attempt to organize IOENGINE under the Act and to effect colorable compliance with its requirements. Mr. McNulty signed and had notarized the formation document for IOENGINE, LLC "pursuant to the Delaware Limited Liability Company Act" on October 7, 2014. (D.I. 179, Decl. Ex. 3.). Third, the fact that IOENEINE's documents were finalized, executed, and notarized by October 7, 2014 evidenced its formation. The IOENGINE, LLC formation document also states that on October 7, 2014, IOENGINE designated United Corporate Services, Inc. as its registered agent in Delaware, as required by the Delaware LLC Act. Mr. McNulty also testified that upon forming IOENGINE he provided funds with which to pay United Corporate Services and open a

9

bank account in the name "IOENGINE." (D.I. 179, Ex. 4 at 16:11-19.) In addition, the execution of a patent assignment to obtain property on behalf of IOENGINE appears to have been an exercise of corporate powers on October 7, 2014. All of these efforts demonstrate a good faith, *bona fide* attempt to comply with the statutory requirements of formation of a limited liability company under Delaware law.

Imation relies on *Leber Assocs., LLC* v. *Entm't Group Fund, Inc.* to attempt to persuade the court that IOENGINE's actions fail to earn it *de facto* status. 2003 WL 21750211 (S.D.N.Y. July 29, 2003); (D.I. 173 at 6; D.I. 181 at 5.) This case is distinguishable from *Leber* where the district court, applying Delaware law, held that the plaintiff entity was not a *de facto* LLC. 2003 WL 21750211, at *10 ("Merely giving instructions to an attorney is insufficient as a matter of law to establish *de facto* status.") In *Leber*, the district could not find a good faith attempt to comply with the statutory requirements, because the record lacked evidence that "anybody connected to Leber Associates [LLC] ever drew up a certificate of formation or attempted to file such a certificate until after this lawsuit commenced." In the present case, however, formation documents had been drafted and finalized with the advice of counsel as of October 7, 2014. Furthermore, like the entity in *Big Valley Associates*, IOENGINE perfected its *de jure* status well in advance of the inception of this lawsuit. The court will, therefore, recognize IOENGINE as a *de facto* LLC at the time of the Patent Assignment and find that IOENGINE has standing to bring suit.

### CONCLUSION

For the foregoing reasons the court will deny the motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(c) and 12(b)(1). (D.I. 173.)

Dated: January 4, 2017

UNITED STATES DISTRICT JUDGE